IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JEFFREY L. HELMS, | ) | C/A NO. 4:21-cv-03266-JD |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND OPINION** |
| | ) | |
| HILTON RESORTS CORP. d/b/a, HILTON | ) | |
| GRAND VACATIONS, and HILTON | ) | |
| GRAND VACATIONS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court with the Report and Recommendation ("Report and Recommendation" or "Report") of United States Magistrate Judge Thomas E. Rogers, III, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1]  (DE 63.)  Plaintiff Jeffrey L. Helms ("Plaintiff" or "Helms") filed this action against Hilton Resorts Corp. d/b/a, Hilton Grand Vacations, and Hilton Grand Vacations, LLC ("Defendants" or "HGV"), alleging causes of action for age discrimination, retaliation, and hostile work environment in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq., national origin discrimination, sex discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000(e), et seq., retaliation and hostile work environment in violation of the Americans with

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court.  See Mathews v. Weber, 423 U.S. 261, 270-71 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28 U.S.C. § 636(b)(1).

Disabilities Act (ADA), 42 U.S.C. § 12101, et seq., and violation of the South Carolina Payment of Wages Act (SCPWA), S.C. Code Ann. § 41-10-10, et seq.  (DE 1-1.)

On August 15, 2022, HGV filed a Motion for Summary Judgment under Rule 56, Fed. R. Civ. P., seeking to dismiss Plaintiff's lawsuit.  (DE 47.)  By Order filed August 16, 2022, pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal procedure and the possible consequences if he failed to adequately respond to the motion.  (DE 48.)  Thereafter, Plaintiff filed a Response (DE, 51), and Defendants filed a Reply (DE 52).  On January 17, 2023, the magistrate judge issued the Report, recommending "that Defendants' Motion for Summary Judgment (ECF No. 47) be granted as to Plaintiff's Title VII, ADEA, and ADA causes of action, and the Court decline to exercise jurisdiction over Plaintiff's state law claim and remand the remaining claim to the Court of Common Pleas, Horry County, South Carolina."  (DE 63, p. 19.)  Accordingly, for the reasons stated below, the Court adopts the Report and grants Defendants' Motion for Summary Judgment, as provided herein.

## **BACKGROUND**

The Report and Recommendation sets forth the relevant facts and legal standards, which the Court incorporates herein without a complete recitation.  However, as a brief background relating to the objections raised by Plaintiff, the Court provides this summary.

Plaintiff is a sixty-five-year-old white male.  He began working for HGV on June 14, 2017, as a Sales Executive on the Action Line.  (DE 1-1, ¶ 22, DE 47-2, p. 34:9-11.)  Defendant's business model relies on the sale of vacation ownership at each of its resorts. There are two distinct sales departments at the Ocean Enclave resort where Plaintiff worked: "Action Line" and "In-house."  (DE 47-2, p. 38:18-23.)  The Action Line sells to new HGV customers and the In-house line sells to existing HGV owners.  <u>Id.</u>  An Action Line Sales Executive takes customers on a

minimum 90-minute tour of the facility, which ends at the Sales Executive's desk on the sales floor.  (DE 1-1,  ¶ 25.)  When the Sales Executive successfully persuades a customer to make a purchase, they turn the customer over to a Sales Leader, commonly called a "T.O." (Takeover Manager).  (DE 47-3, p. 29:10-23.)  The T.O. has access to the available inventory, which they present to the customer for selection, after which the sales contract is prepared and signed.  Id.

HGV measures Sales Executives' performance in two ways:  volume per guest ("VPG") and net closing percentage. VPG is "similar to a baseball batting average. It [is] the amount of volume" measured in dollars "that a Sales Executive has been able to sell, divided by the number of  prospects he has seen."  (DE 47-4, p. 27:16-20.)  Net closing percentage is the number of sales made by the Sales Executive divided by the number of customers the Sales Executive has taken on tours during a prescribed period of time.  (DE 47-5, p. 13:16-248, DE 47-6, p. 21:18-19.)  During Plaintiff's employment, each Action Line Sales Executive had to maintain a VPG of 90% or greater of the monthly budgeted VPG, or a monthly net closing percentage of 11.5%, to avoid performance counseling. Performance Reports (DE 47-7).  Plaintiff asserts in his Response that VPG was always the determining factor for performance, both with HGV and during his entire sales career of twenty years in timeshares and/or vacation ownership sales. He points to Minimum Performance Standards/Action Line Rules, which states that "Action Line is set up on two metrics: 50%of the weight on a 30-day VPG look back and 50% on a 90-day VPG look back."  (DE 51-1, p. 1.)

In early 2020, as a result of the COVID-19 pandemic, HGV's timeshare business was substantially impacted as hotels and resorts were forced to close.  Ocean Enclave closed as a result of COVID-19 on March 19, 2020.  (DE 1-1, ¶ 56.)  Approximately two weeks later, HGV reopened Ocean Enclave with a skeleton crew of 17 Action Line Sales Executives and implemented a

furlough for the remaining 53 Sales Executives in the department.  (DE 47-5, p. 23:12-16.)  HGV informed the impacted Sales Executives, including Helms, of this furlough via letter dated April 3, 2020.  (DE 47-9.)  The Furlough Letter states that "seniority will not change as a result of being placed on temporary furlough."  (Id.)  Plaintiff notes that he was senior both in age and in years of service.

Throughout 2020, local management teams developed plans for a phased return to work of a percentage of the workforce based on market conditions and, later, a selection process for those who would be terminated as part of a nationwide Reduction in Force (RIF) caused by the ongoing economic impact of the pandemic.  (DE 47-5 p. 20:8-20, DE 47-6, p. 19:20-20:19.)  HGV's Vice President of Sales for South Carolina, Mike Riley, prepared a strategy for furloughs and phased reopening with Ocean Enclave's management team, Roger Gorby (then-Senior Director of Sales), John Gibbs (then-Senior Sales Manager), and Woody Dellis (then-Director of Sales) (collectively, the "management team").  (Id.)  For the Action Line at Ocean Enclave, the management team determined the most appropriate metric for ranking and returning the Sales Executives was the individual's net closing percentage.  (DE 47-6, pp. 20:13-15, 25:11-21, 34:11-35:7, 49:11-23; DE 47-5, p. 20:8-21:15, DE 47-4, p. 31:13-23.)  Riley testified that HGV needed as many new customers to make purchases as possible following the reopening of Ocean Enclave.  (DE 47-6, p. 21:1-10.)  HGV did not use seniority, tenure, or any other criteria for the furloughs or return of employees except net closing percentage.  (DE 47-10, p. 11:23-25-12:2.)  Helms disputes that net closing percentage was the measure used to determine which Sales Executives would return to work and in what order.

As travel and the hospitality industry continued to partially re-open in 2020, the management team created a plan to bring additional employees back from furlough.  Using the

available market forecasts of projected tours provided to them, the management team estimated how many Sales Executives would be required.  (DE 47-6, pp. 22:1-23, 25:11-21.)  HGV brought back additional Sales Executives in phases, including Plaintiff.  (DE 47-11, DE 47-5, p. 28:1-29:3, DE 1-1, ¶ 79.)  The selection criterion for bringing back additional Action Line Sales Executives was the same as was used for Phase 1 (the top Sales Executives by net closing percentage), but the look-back period was extended from 6 months to 12 months.  (DE 47-5, p. 28:9-17, DE 47-6, pp. 16:19-17:2, 22:19-23:7.)  Due to ongoing economic challenges presented by COVID-19, HGV was forced to implement a nationwide RIF on October 31, 2020.  (DE 47-12.) HGV's RIF affected "approximately 1600" employees nationwide.  (Id.)  Riley testified that at all times throughout the process, the only factor that determined whether an Action Line Sales Executive was furloughed, returned to work, or terminated pursuant to the RIF was that Sales Executive's relative ("stacked") rank among all Action Line Sales Executives at Ocean Enclave based on their net closing percentage.  (DE 47-6 p. 25:11-21.)

    When the furlough began, Plaintiff ranked 32nd among Action Line Sales Executives based on his net closing percentage of 9.57% over the preceding six months.  (DE 47-13.)  As noted above, 17 Sales Executives were retained in Phase 1, and the remaining, including Plaintiff, were furloughed on April 2, 2020.  (Id.)  When business conditions improved and the projected number of tours increased, the management team expanded the look-back period to 12 months to determine which Sales Executives to recall from furlough as conditions improved.  A 12-month net closing percentage look-back was used because it provided the most accurate representation of a team member's effectiveness.  (DE 47-6, pp. 16:19-17:14, 22:19-23:7.)  Plaintiff's reported net closing percentage using the 12-month look-back period was 9.63%, and he ranked 37th.  (DE 47-11, p. 3.)  HGV returned Plaintiff to work on September 2, 2020.  (DE 1-1, ¶ 79.)  Gibbs testifies that

Plaintiff was returned solely based on his position in the stacked ranking of Action Line Sales Executives using net closing percentage over a 12-month look-back period.  (DE 47-5, p. 28:9-17.)

Plaintiff asserts that he was returned to work only after he sent a letter to corporate on August 23, 2020, complaining that he had not been returned to work, and his return came after the entire summer season had already passed.  (DE 47-17.)  He also notes that, upon his return, he learned that his employment status had been changed to "terminated employee," which the management team described as a mistake.  However, Plaintiff argues that HGV never intended to return Plaintiff to work, and based upon VPG, he was ranked number 1 out of 72 sales executives.

Plaintiff filed two charges of discrimination with the Equal Employment Opportunity Commission (EEOC). The first is dated November 2, 2020. (DE 47-15, p. 2.)  He checked boxes indicating he was discriminated against on the basis of race, national origin, retaliation, age, and disability.  He filed a second charge on January 7, 2021, in which he also checks boxes for race, retaliation, sex, age, and disability.  (DE 47-15, p. 4.)  He also states that when he finally did return to work on September 2, 2020, he was subjected to differential treatment by Gorby and Gibbs. (Id.)

## **DISCUSSION**

On January 31, 2023, HVG filed an objection to the Report, and on February 1, 2023, Helms did the same.  (DE 65, DE 66.)  However, to be actionable, objections to a report and recommendation must be specific.  Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge.  See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir. 1984).  "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining

that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues -- factual and legal -- that are at the heart of the parties' dispute.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (2005) (citing Thomas v. Arn, 474 U.S. 140 (1985)). "A general objection to the entirety of the magistrate judge's report is tantamount to a failure to object." Tyler v. Wates, 84 F. App'x 289, 290 (4th Cir. 2003). "Likewise, a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Upon review, the Court finds that HVG objects to the Report because "it recommends that the Court decline to exercise jurisdiction over Plaintiff's state law claim." (DE 65, p. 2.) Conversely, Helms raises several non-specific objections or arguments, which rehash his opposition to HVG's motion for summary judgment[2] and that center on the fact granting summary judgment will deprive him of his constitutional right to a trial by jury. (DE 66.) Nevertheless, at best, the Court considers Plaintiff's objection to question whether genuine issues of material fact exist, which would make summary judgment inappropriate here. Helms alleges that HGV discriminated against him because of his age, gender, and national origin by returning younger, female employees to work following the furlough prior to returning him and because Gibbs, the Senior Sales Manager, appeared to be of middle-eastern descent and Plaintiff is Caucasian.

---

[2]    Helms does not raise a specific objection regarding the Report's recommendation on his Retaliation or Hostile Work Environment claims. In fact, retaliation appears only once, referring to his causes of action (DE 66, p. 1). In addition, Helms's hostile work environment objection is a repeat of his arguments in response to the motion for summary judgment, which does not constitute an objection for the purposes of district court review. See Nichols v. Colvin, 100 F. Supp. 3d 487 (E.D. Va. 2015).

Although Helms was returned to work, rather than being discharged in a RIF, he nonetheless relies on circumstantial evidence to support these claims.

As the Report correctly notes, the Court analyzes these claims using the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Moreover, without objection, the Report considered a prima facie case of discrimination in a RIF context which provides, Plaintiff must show (1) he was a member of a protected class; (2) he was selected for discharge from a larger group of candidates; (3) he was performing at a level substantially equivalent to the lowest level of those of the group retained; and (4) the process of selection produced a residual work force including some persons in the group who were outside the protected class and who were performing at a level lower than that at which he was performing. See Stokes v. Westinghouse Savannah River Co., 206 F.3d 420, 430 (4th Cir. 2000) (ADEA); Corti v. Storage Tech. Corp., 304 F.3d 336, 340 n. 6 (4th Cir. 2002) (Title VII). At bottom, Helms' objection suggests a factual dispute exists regarding whether he was performing at a level substantially equivalent to the lowest level of those of the group retained. HVG relied on a net closing percentage as its metric to determine which sales executives would return from furlough. The Report found that,

> At the time of the furlough decision, Plaintiff ranked 32nd among Action Line Sales Executives based on his net closing percentage of 9.57% measured over the previous six months. (Citation omitted.) When the management team expanded the look-back period to 12 months when returning Sales Executives from furlough, Plaintiff's rank dropped to 37th based on a 9.63% closing percentage. (Citation omitted.) Of the top seventeen Sales Executives who were in the first group to return, none had a closing percentage of less than 12%. (Citation omitted.)

(DE 63, p. 11.) On the other hand, Helms argues that "[d]uring [his] employment Volume Per Guest ("VPG") was always the determining factor for performance during [his] career . . . ." (DE 66, p. 5.) Notwithstanding Helms' historical understanding and perception, the Report correctly states that "[i]t is within the employer's purview, in implementing a RIF, to analyze its employees'

performance and determine, without utilizing any protected characteristic, who must be terminated." Marshall v. AT&T Mobility Servs., LLC, No. 3:17-CV-1577-CMC, 2019 WL 1274723, at *4 (D.S.C. Mar. 20, 2019), aff'd, 811 F. App'x 849 (4th Cir. 2020) (unpublished); see also Rowe v. Marley Co., 233 F.3d 825, 831 (4th Cir. 2000) ("The decision to discharge [the plaintiff] and retain [others] is the kind of business decision that we are reluctant to second-guess."). When assessing job performance, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996). Helms has not offered any evidence that HVG considered any protected traits–age, sex, or national origin–when it decided who would return to work following the furlough and when. Accordingly, Plaintiff's objection is overruled.

As to HVG's objection regarding the Report's recommendation "that the Court decline to exercise jurisdiction over Plaintiff's state law claim[,]" HVG contends consideration of the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy[,]" counsel in favor of this Court exercising supplemental jurisdiction. Shanaghan v. Cahill, 58 F.3d 106, 110 (4th Cir. 1995). To that end, HVG invites this Court to follow the reasoning in Johnson v. Builders Firstsource Se. Grp., LLC, No. 3:21-cv-02612-SAL, 2023 U.S. Dist. LEXIS 4214, at *7 (D.S.C. Jan. 9, 2023), wherein the District Court adopted the Report and Recommendation, which recommended the court retain jurisdiction over a defamation claim and to adopt the magistrate judge's recommendation (which was to grant summary judgment on that claim). This Court declines to do so here. While the Court in Johnson was well reasoned in its deportment and decision-making on supplemental jurisdiction, the facts, in this case, are strikingly dissimilar. Here, the Report does not include a recommendation regarding the disposition of Helms's state law claim, rather, the Report simply

recommends remanding the case to state court. Accordingly, the judicial economy advanced in Johnson is not present here. Given these differences, HVG's objection is overruled.

Accordingly, after a thorough review of the Report and Recommendation and the record in this case, the Court adopts the Report (DE 63) as modified herein and incorporates it by reference.

It is, therefore, **ORDERED** that Defendants' Motion for Summary Judgment (DE 47) is granted, and this Court declines to retain jurisdiction over Plaintiff's remaining state law claim and, therefore, remands this matter to State court.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
February 24, 2023

**NOTICE OF RIGHT TO APPEAL**

Plaintiff is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.